## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

|  |  |
|---|---|
| UNITED STATES OF AMERICA | |
| *ex rel.* | |
| EIYO BOWL LLC, | Case No.: 1:24-cv-_____ |
| Plaintiff/Relator, | *QUI TAM* COMPLAINT |
| v. | FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2) |
| FORWARD ARTS FOUNDATION, INC.; JEANNE BOWDEN; ATLANTIC GRILL, LLC; ATLANTIC GRILL HOLDINGS, LLC; PAUL SACHETTI; SEAN M. BISHOP; and REGINALD STOTTS, | JURY TRIAL DEMANDED |
| Defendants. | |

1

## TABLE OF CONTENTS

**Page**

I.     INTRODUCTION .................................................................3

II.    JURISDICTION AND VENUE ...................................................4

III.   PARTIES .......................................................................5

    A.     Relator .................................................................5

    B.     Defendants .............................................................7

        1.     Forward Arts Foundation ...........................................7

        2.     Atlantic Grill ...................................................7

IV.    STATUTORY AND REGULATORY BACKGROUND ...........................7

    A.     The Effects of the COVID-19 Pandemic on the Restaurant Industry ...............................................................7

    B.     The RRF Program ....................................................10

    C.     The RRF Program Application Process .............................12

    D.     Priority Status ......................................................15

V.     DEFENDANTS' FRAUDULENT SCHEMES ...............................17

    A.     Forward Arts Foundation ...........................................17

    B.     Atlantic Grill ........................................................20

VI.    CAUSES OF ACTION ...........................................................24

VII.   PRAYER FOR RELIEF .........................................................25

VIII.  JURY DEMAND ................................................................25

## COMPLAINT FOR FALSE CLAIMS ACT VIOLATIONS

This action is brought on behalf of the United States of America by Eiyo Bowl LLC ("Relator"), by and through its attorneys, against Defendants Forward Arts Foundation, Inc.; Jeanne Bowden; Atlantic Grill, LLC; Atlantic Grill Holdings, LLC; Paul Sachetti; Sean M. Bishop; and Reginald Stotts (collectively, "Defendants"), under the *qui tam* provisions of the False Claims Act ("FCA"), 31 U.S.C. §§ 3729-33.

## I.    INTRODUCTION

1.    This is an action to recover damages and civil penalties on behalf of the United States arising from false statements and claims that Defendants knowingly presented or caused to be presented to the United States and its agents and intermediaries, in violation of the FCA.

2.    Congress established the Restaurant Revitalization Fund ("RRF") in 2021. The RRF was intended to be a multibillion-dollar lifeline for restaurants whose business had suffered during the COVID-19 pandemic. The RRF was administered by the U.S. Small Business Administration ("SBA").

3.    Under the RRF, an eligible business was entitled to apply for a grant of up to $10 million to support its ongoing operations. To ensure that the limited funds available through the RRF went only to the businesses that needed them most, Congress and the SBA established various rules concerning eligibility for the RRF

program. These rules were straightforward, clear, and easily accessible. At all times, a potential applicant could consult the SBA's RRF Program Guide, the SBA website, and an online question bank with answers to dozens of questions an applicant might have.

4.      Most applicants had no difficulty complying with these rules. Several businesses, however—either with actual knowledge, deliberate indifference, or reckless disregard of the truth—knowingly flouted the RRF eligibility rules to obtain money to which they were not entitled.

5.      The fraud on the RRF program has doubly harmed American taxpayers. *First*, ineligible businesses have wrongfully obtained tens of millions of dollars to which they were not entitled. *Second*, many businesses that ought to have received funding under the RRF program were unable to do so. Every dollar that went to an ineligible applicant is a dollar that could have helped an eligible applicant to remain solvent and to continue supporting the local economy.

## II.    JURISDICTION AND VENUE

6.      The Court has subject-matter jurisdiction over this action under 31 U.S.C. § 3732(a) and 28 U.S.C. § 1345. The Court has personal jurisdiction over Defendants because, among other things, Defendants Forward Arts Foundation, Inc.; Jeanne Bowden; Atlantic Grill, LLC; and Atlantic Grill Holdings, LLC are headquartered in or reside in this judicial district.

7.    Venue is proper in this district under 31 U.S.C. § 3732(a) and 28 U.S.C. §§ 1391(b) and (c). Acts proscribed by 31 U.S.C. § 3729 occurred in this district. Venue is proper in this division under Local Rule 3.1(B) because, among other things, Defendants Forward Arts Foundation, Inc.; Jeanne Bowden; Atlantic Grill, LLC; and Atlantic Grill Holdings, LLC reside in this division and the cause of action against each Defendant arose, in whole or in part, in this division.

8.    The claims for relief alleged in this Complaint are timely brought because, among other things, Defendants sought to conceal from the United States their wrongdoing.

## III.    PARTIES

### A.    <u>Relator</u>

9.    Relator Eiyo Bowl LLC is a New York corporation headquartered in Kings County, New York. Eiyo Bowl LLC does business as AO Bowl.

10.    Relator is owned and managed by Zachary Howitt, a New York-based entrepreneur and military veteran. In 2019, he fulfilled a longstanding aspiration to sign a lease for a new restaurant in New York's East Village. Inspired by his experience in Japan while deployed with the U.S. Navy, Mr. Howitt intended to open a restaurant called AO Bowl, serving healthy and affordable bowls and smoothies.

11.    The buildout of AO Bowl was complete by April 2020. However, because of the COVID-19 pandemic, Mr. Howitt was forced to delay the opening of

his restaurant until early 2021.

12.    Although the economic devastation of the pandemic ordinarily may have convinced Mr. Howitt to close his restaurant, Mr. Howitt was hopeful that the RRF program could save his business. Because RRF grants were available only for business that were open at the time of their application, Mr. Howitt kept his restaurant open, incurring significant debt. Ultimately, AO Bowl did not receive an RRF grant and Mr. Howitt was forced to close his business. Although Mr. Howitt was able to reopen AO Bowl several months later with a partner, the business remains severely indebted after failing to receive assistance from the RRF Program—tens of millions of dollars of which went to ineligible businesses instead.

13.    Based on his expertise as a restaurateur and his knowledge of the RRF program, Mr. Howitt was able to detect and uncover numerous instances of fraud whereby ineligible businesses wrongfully obtained RRF grants.

14.    Relator has direct knowledge of the conduct alleged in this Complaint and conducted an independent investigation to uncover false claims submitted to the United States.

15.    Accordingly, Relator is an "original source" of the information alleged in this Complaint within the meaning of the FCA.

16.    Before filing this Complaint, Relator provided the government with written disclosure of substantially all material evidence and information that Relator

possessed, in accordance with 31 U.S.C. § 3730(b)(2).

### B.    Defendants

#### 1.    Forward Arts Foundation

17.    Forward Arts Foundation, Inc. is a Georgia nonprofit corporation headquartered at 3130 Slaton Drive NW, Atlanta, GA, 30305. Jeanne Bowden is the Chair of Forward Arts Foundation, Inc.

#### 2.    Atlantic Grill

18.    Atlantic Grill, LLC is a Georgia company headquartered at 1274 Francis Street NW, Atlanta, GA 30318. Atlantic Grill, LLC was formerly owned and operated by Paul Sachetti. It is currently owned and operated by Sean M. Bishop and Reginald "Reggie" Stotts.

19.    Atlantic Grill Holdings, LLC is a Georgia company headquartered at 1274 Francis Street NW, Atlanta, GA 30318. Atlantic Grill Holdings, LLC is owned and operated by Sean M. Bishop and Reginald "Reggie" Stotts.

## IV.    STATUTORY AND REGULATORY BACKGROUND

### A.    The Effects of the COVID-19 Pandemic on the Restaurant Industry

20.    The restaurant industry has "a widely embedded, high level of business risk":[1] factors outside a restaurant's control, such as the ability and willingness of the public to patronize its business, can have a cataclysmic impact on the restaurant's

---

[1] Hyoung Ju Song *et al.*, *Impact of the COVID-19 Pandemic, Evidence from the U.S. Restaurant Industry*, 92 Int'l J. Hospitality Mgmt. 102702, at 1 (2021).

financial health. "Profit margins in the restaurant industry tend to be extremely thin, and many restaurants, even at the best of times, are effectively only one upheaval, disaster, or major disruption away from losing viability."[2]

21.    In 2020, the restaurant industry accounted for more than $300 billion in wages[3] and about 11 million jobs.[4] The industry constituted 4 percent of U.S. GDP.[5] A major blow to the restaurant industry would result in dire follow-on effects throughout the American economy.

22.    The COVID-19 pandemic dealt such a blow to the restaurant industry. In April 2020, a survey of restaurant operators found that respondents believed their businesses had a 72% chance of survival if the pandemic lasted one month, a 30% chance of survival if the pandemic lasted four months, and a 15% chance of survival if the pandemic lasted six months.[6] As public-health measures forced the closure of restaurants and domestic and international travel plummeted, the effects of the

---

[2] Jennifer J. Otten *et al.*, *The State of the Washington State Food System During COVID-19: Taking Stock and Looking Ahead* 53-54 (2021), *available at* https://cms.agr.wa.gov/WSDAKentico/Documents/DO/Communications/WAFS-FinalReport.pdf.

[3] Neil Irwin, *One Simple Idea That Explains Why the Economy Is in Great Danger*, N.Y. Times (Mar. 17, 2020), https://nyti.ms/2QpRyeo.

[4] Charles Lew, *As Restaurants Go, So Goes the Economy*, Forbes (Apr. 20, 2020), https://www.forbes.com/sites/forbesbusinesscouncil/2020/04/20/as-restaurants-go-so-goes-the-economy.

[5] *Id.*

[6] Michael G. Brizek *et al.*, *Independent Restaurant Operator Perspectives in the Wake of the COVID-19 Pandemic*, 93 Int'l J. Hospitality Mgmt. 102766, at 1 (2021).

pandemic were even worse than many of those respondents feared. Nine months after that survey, as the pandemic continued and even worsened, the *New York Times* reported that "no industry has been clobbered like restaurants and bars."[7] The experience of Gertie, a popular Brooklyn restaurant, is emblematic of the struggles faced by restaurants and bars across the country:

> [In 2019], Gertie made about $30,000 a week, packing dozens of diners at a time inside its bright, cavernous dining room. During the worst days of the pandemic, it made $50 selling coffee and pastries on some mornings, not enough to pay the barista and baker. Sales slowly climbed through late summer [2020] to about $1,000 per day.[8]

23.    Even after the most restrictive public-health measured were lifted and restaurants implemented safer dining protocols such as outdoor seating and advanced air-filtration systems, many potential customers continued to stay home instead of dining out. Compounding these challenges, restaurants struggled to pay their employees, leading them to quit in droves: every month from January through July 2021, five percent of the entire hospitality workforce quit their jobs.[9]

---

[7] Matthew Haag, *Inside One Brooklyn Restaurant's Desperate Fight to Survive the Pandemic*, N.Y. Times (Nov. 1, 2020), https://www.nytimes.com/2020/11/01/nyregion/williamsburg-restaurant-reopening-brooklyn.html.

[8] *Id.*

[9] Alina Selyukh, *Low Pay, No Benefits, Rude Customers: Restaurant Workers Quit at Record Rate*, NPR (July 20, 2021), https://www.npr.org/2021/07/20/1016081936/low-pay-no-benefits-rude-customers-restaurant-workers-quit-at-record-rate.

24.    Ultimately, in 2020, "about 72,700 more restaurants and bars than normal closed, apparently due to the pandemic, a 95 percent jump over the average annual rate."[10]

### B.    The RRF Program

25.    In the wake of these catastrophic events, Congress established the RRF in March 2021 as part of the American Rescue Plan Act of 2021. The law appropriated $28.6 billion in aid for the U.S. Small Business Administration (SBA) to distribute to certain businesses in the restaurant industry to offset their losses during the pandemic.[11]

26.    The RRF was subject to various restrictions concerning which businesses could apply for funds, in what priority their applications would be reviewed, and how much funding they were eligible to receive. These requirements and limitations, all of which were material to the SBA's decision to award RRF grants, were published in four sources: the RRF statute, the RRF grant application, the RRF Program Guide, and the RRF Knowledge Base, all of which have been at all relevant times readily available online for the public to view. The RRF Program's restrictions included:

---

[10] Tim Carman, *How Many Restaurants Closed from the Pandemic? Here's Our Best Estimate.*, Wash. Post (June 21, 2022), https://www.washingtonpost.com/food/2022/06/21/covid-restaurant-closures/.

[11] American Rescue Plan Act of 2021, Pub L. No. 117-2, § 5003(b)(2)(A), 135 Stat. 4, 86 (Mar. 11, 2021) (codified at 15 U.S.C. § 9009c(b)(2)(A)).

- **Eligible entity:** A business was eligible to receive RRF funding only if it was a "business in which the public or patrons assemble for the primary purpose of being served food or drink."[12] This included "a restaurant, food stand, food truck, food cart, caterer, saloon, inn, tavern, bar, lounge, brewpub, tasting room, taproom, licensed facility or premise of a beverage alcohol producer where the public may taste, sample, or purchase products, or other similar place."[13]

- **Restrictions on certain types of businesses:** Businesses of the types enumerated in 13 C.F.R. § 120.110 were not eligible for the RRF Program.[14]

- **Currently operating:** An applicant was eligible to receive funding only to support its "ongoing operations."[15] Accordingly, a business was ineligible to receive funding if it was permanently closed at the time of its grant application.[16]

- **Amount of funding:** The amount of a grant under the RRF was equal to the pandemic-related revenue loss of the eligible entity,[17] defined for most purposes as the entity's gross receipts during 2020 subtracted from the entity's gross receipts in 2019.[18]

- **$10 maximum in aggregate funding:** Each eligible entity was entitled to a maximum of $10 million in aggregate funding and a maximum in $5 million in funding per physical location of the eligible entity.[19]

---

[12] 15 U.S.C. § 9009c(a)(4)(A).

[13] *Id.*

[14] SBA, *Restaurant Revitalization Funding Program Guide* 6 (2021).

[15] 15 U.S.C. § 9009c(c)(2)(A)(i).

[16] SBA, *Restaurant Revitalization Funding Program Guide* 3 (2021); SBA, *RRF Knowledge Base – Is my business type eligible?*, https://ussbaforgiveness.zendesk.com/hc/en-us/articles/360059869371-Is-my-business-type-eligible (last visited Sept. 18, 2024).

[17] 15 U.S.C. § 9009c(c)(4)(B)(i).

[18] *Id.* § 9009c(A)(7)(A).

[19] *Id.* § 9009c(c)(4)(A)(i)-(ii).

- **Use of funds:** A recipient of an RRF grant was permitted to use such funds only for ordinary expenses incurred as a direct result of, or during, the COVID-19 pandemic.[20] If a grantee failed to use all its funds or permanently ceased operations on or before March 11, 2023, it was required to return any funds not used for allowable expenses to the Treasury.[21]

### C.    The RRF Program Application Process

27.    All applicants for RRF grants were required to, and did, submit their applications using SBA Form 3172.[22] Generally, applicants were also required to provide IRS Form 4506-T, three months of bank statements, their 2019 tax return, and documentation showing their 2020 gross receipts.[23]

28.    RRF applications were completed using the SBA's online portal, using a series of drop-down boxes and open-ended form fields to enter the appropriate information.[24] At all times during the application process, a button titled "Need Help" was displayed on the bottom-right corner of the screen:

---

[20] *Id.* § 9009c(c)(5)(A)-(K).

[21] *Id.* § 9009c(c)(6).

[22]    Form    3172    is    available    at    the    following    address: https://www.sba.gov/sites/sbagov/files/2021-04/SBA%20Form%203172%20RRF%20Application%204.20.21-508.pdf.

[23]  For applicants that opened in 2020 or later, the SBA required additional documentation showing their gross receipts in 2021. For applicants that were not yet open on March 11, 2021, the SBA required documentation demonstrating their eligible expenses, such as a letter from a third-party accountant with associated profit and loss statements and balance sheet documentation.

[24]  Screenshots showing various steps in the application portal can be found on the SBA's  website:  https://www.sba.gov/sites/default/files/2021-04/2021.04.30%20-%20Application%20Portal%20Sample-508.pdf.



29.    Clicking this button opened a menu with convenient links to the SBA's website, the RRF Program Guide, and the RRF application form. In addition, applicants could use a text field to type questions, which would return results from the RRF Knowledge Base:



30.    Once each applicant submitted its application and supporting documents electronically, the applicant was taken to a webpage where it executed a DocuSign package to finalize its application.

31.    After opening the application process, the SBA was flooded with over 372,000 applications requesting $76 billion in funds, "far greater than its $28.6 billion authorized amount."[25]

32.    In the face of this overwhelming volume of applications, the SBA was unable to carefully review every representation made by every applicant to determine whether they were true. Rather, RRF applications largely were processed on an honor system, with the SBA generally accepting applicants' representations at face value.

33.    For instance, if an applicant certified that it belonged to a priority group, the SBA automatically assigned the applicant priority status, irrespective of whether that certification was true. Likewise, if an applicant certified that it was a restaurant, the SBA assumed the business was one where the public gathered primarily for the purpose of being served food and drink, without further inquiring or investigating whether that was true.

---

[25] *Id.*

34.     Numerous applicants were able to take advantage of the overwhelming and chaotic nature of the RRF application process to receive grants to which they were not entitled.

**D.     Priority Status**

35.     Under the RRF Program, the SBA was "required to provide priority to small businesses owned and controlled by women, veterans, and socially and economically disadvantaged individuals and to award grants only to these prioritized groups during the initial 21 days that the program was operational."[26] The SBA determined that, during the initial 21-day period, it would "accept applications from all eligible applicants but would distribute funds only to applicants that self-certified their eligibility as a prioritized group. Thereafter, the SBA would distribute grants in the order in which they were approved."[27]

36.     By May 26, 2021—the day before the SBA even began to review non-priority applications—the agency had already distributed $16 billion to 63,000 self-certified priority applicants.[28] In other words, 56% of the total amount Congress had allocated for the entire RRF Program went to just 17% of the applicants—all of

---

[26] Adam G. Levin, Cong. Rsch. Serv., IF1189, *SBA Restaurant Revitalization Fund Grants* 1 (2022), *available at* https://crsreports.congress.gov/product/pdf/IF/IF11819; *see* 15 U.S.C. § 9009c(c)(3)(A).

[27] Levin, *supra* note 26, at 1.

[28] *See id.* at 2.

whom were awarded priority status based solely on self-certifications.[29] By the time the SBA began to review non-priority applications, 309,000 applicants were competing for just $12.8 billion in remaining funds.[30]

37.    Therefore, an applicant's representation that it belonged to a priority group was an extremely important factor in determining whether the applicant would receive an RRF grant at all. An applicant that claimed priority status (and had no deficiencies or technical issues with its application) essentially had a 100% chance of receiving an RRF grant. An applicant that did not claim priority status had a 12.3% chance of receiving a grant.

38.    Thus, priority status was akin to a small-business set-aside program in which only certain business types enumerated by statute were entitled to a significant—and often dispositive—advantage under the RRF Program.

39.    Moreover, irrespective of the order in which applications were processed, the SBA strongly indicated that misrepresentations as to priority status were material to the agency's decision to award an RRF grant at all. For instance, the SBA advised applicants that if they reorganized their ownership for the purpose

---

[29] *See id.*

[30] *See id.*

of qualification as a priority applicant, such behavior would "result in automatic disqualification of the award:"[31]

> ## Can I change my business's ownership in order to qualify as a priority group?
>
> 3 years ago · Updated
>
> No. An Applicant may not re-organize ownership on or after March 11, 2021, for the purpose of qualification for the priority period. Such re-organization will result in automatic disqualification of the award. Although Applicants self-certify that they are eligible as one of the priority groups, SBA reserves the right to request documentation from any Applicant.

## V.    DEFENDANTS' FRAUDULENT SCHEMES

40.    Defendants have engaged in deliberate schemes to fraudulently obtain RRF grants by making explicit and implicit false representations on their RRF grant applications.

### A.    <u>Forward Arts Foundation</u>

41.    Forward Arts Foundation is a nonprofit organization in Atlanta, Georgia that supports the visual arts in Atlanta. Forward Arts Foundation receives its revenue from donations, as well as sales from a flea market, a fashion show, a

---

[31] SBA, *RRF Knowledge Base – Can I change my business's ownership in order to qualify as a priority group?*, https://ussbaforgiveness.zendesk.com/hc/en-us/articles/360059869171-Can-I-change-my-business-s-ownership-in-order-to-qualify-as-a-priority-group (last visited Sept. 7, 2024).

cookbook, a gift shop, an art gallery, event rentals at its property, and a small museum restaurant.

42.    Forward Arts Foundation is based at the Swan Coach House, located on the grounds of the Atlanta History Center.

43.    Forward Arts Foundation is registered as a Domestic Nonprofit Corporation with the state of Georgia and as a 501(c)(3) organization with the Internal Revenue Service.

44.    Forward Arts Foundation was doubly ineligible for the RRF Program. *First*, its primary purpose is not to serve food and drink to the public. Rather, as Forward Arts Foundation stated in its Form 990, its mission is "to provide significant support to the visual arts in the Atlanta, GA area." Forward Arts Foundation operates a small museum restaurant open 3.5 hours per day, 6 days per week—or 21 hours total each week.

45.    *Second*, as a nonprofit organization, it was ineligible as a business enumerated in 13 C.F.R. § 120.110. If there were any doubt as to Forward Arts Foundation's eligibility as a nonprofit organization, the SBA resolved this doubt with simple and direct guidance via its online Knowledge Base[32] and Program

---

[32] SBA, *RRF Knowledge Base – What are other eligibility restrictions?*, https://ussbaforgiveness.zendesk.com/hc/en-us/articles/360059869271-What-are-other-eligibility-restrictions (last visited Sept. 18, 2024); *accord* SBA, *RRF Knowledge Base – Is my business type eligible?*, https://ussbaforgiveness.zendesk.com/hc/en-us/articles/360059869371-Is-my-business-type-eligible (last visited

Guide:[33]



> # What are other eligibility restrictions?
>
> 3 years ago · Updated
>
> In addition to the RRF-specific conditions for ineligibility, businesses listed in 13 CFR 120.110 are ineligible.

46.    In May 2021, Forward Arts Foundation applied for an RRF grant.  In its application, Forward Arts Foundation made the following misstatements:

- Page 3: *Applicant Form of Organization.* Forward Arts Foundation falsely selected "C-Corporation."

- Page 3, question 2: *Which of the following best describes the Applicant's business?* Forward Arts Foundation falsely selected "Restaurant."

- Page 10: *I further certify that the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects.* Forward Arts Foundation falsely initialed beside this statement to indicate it was true.

---

Sept. 18, 2024) (noting that "any Applicant deemed ineligible by 13 CFR 120.110" is "not eligible" for the RRF Program).

[33] SBA, *Restaurant Revitalization Funding Program Guide* 5 (2021) (stating that "All non-profit organizations" are ineligible for the RRF Program).

- Page 11: *The Applicant is eligible to receive funding under the rules in effect at the time this application is submitted*. Forward Arts Foundation falsely initialed beside this statement to indicate it was true.

47.   The foregoing statements were false for the reasons stated above.

48.   On June 7, 2021, in express reliance on Forward Arts Foundation's misstatements, the SBA approved Forward Arts Foundation's application and issued grant # 9961769002 in the amount of $752,047.

**B.   Atlantic Grill**

49.   Atlantic Grill is an Atlanta restaurant formerly owned by Paul Sachetti. The restaurant is operated through Atlantic Grill, LLC.

50.   In January 2021, Sachetti began seeking to sell Atlantic Grill. In February 2021, Sachetti met with Sean Bishop and Reginald "Reggie" Stotts, a married couple interested in purchasing the restaurant. Sachetti agreed to sell the restaurant to Bishop and Stotts.

51.   On April 26, 2021, Bishop established a new company, Atlantic Grill Holdings, LLC. The sale of Atlantic Grill, LLC from Sachetti to Bishop and Stotts closed in May 2021.

52.   In May 2021, Sachetti applied for an RRF grant on behalf of Atlantic Grill, LLC. On May 27, 2021, the SBA approved Atlantic Grill, LLC's application and issued grant # 8610369004 in the amount of $741,118.

53.     Irrespective of the precise date on which the business was sold, Sachetti fraudulently procured or fraudulently failed to return these funds.

54.     RRF grants were available only to certain eligible businesses, not the owners of such businesses.[34] RRF grant proceeds were permitted to be used only for certain expenses of the recipient business.[35] Accordingly, only an owner of the business could apply for an RRF grant on behalf of the business:[36]

## Who can sign the RRF application via Docusign?

3 years ago · Updated

Only an owner authorized by the business to sign on behalf of the business for the RRF application may sign.

55.     The SBA therefore instructed applicants that a former owner of a business was not permitted to apply for an RRF grant on behalf of that business:[37]

---

[34] 15 U.S.C. § 9009c(c)(1).

[35] *Id.* § 9009c(c)(5).

[36] SBA, *Who can sign the RRF application via Docusign?*, https://ussbaforgiveness.zendesk.com/hc/en-us/articles/360059225552-Who-can-sign-the-RRF-application-via-Docusign (last visited Sept. 8, 2024).

[37] SBA, *I sold my business last month, but it incurred loss in revenue for 2020. Am I eligible to apply?*, https://ussbaforgiveness.zendesk.com/hc/en-us/articles/360060340911-I-sold-my-business-last-month-but-it-incurred-loss-in-revenue-for-2020-Am-I-eligible-to-apply (last visited Sept. 8, 2024).

> ## I sold my business last month, but it incurred loss in revenue for 2020. Am I eligible to apply?
>
> 3 years ago · Updated
>
> If you are no longer the owner of the business, you are not eligible to apply for RRF on behalf of the business that you no longer own. RRF funds are awarded to the business, not to the owner.

56.    Moreover, Sachetti certified that Atlantic Grill, LLC was a small business concern owned by one or more veterans. Even assuming that Sachetti is a veteran, Bishop and Stotts are not.

57.    As explained above, an applicant's representation that it belonged to a priority group was an extremely important factor in determining whether the applicant would receive an RRF grant at all.

58.    Thus, if Sachetti sold Atlantic Grill, LLC prior to applying for the RRF grant, Sachetti made the following misstatements:

- Page 2: *Applicant Ownership*. Sachetti falsely listed himself as an owner of Atlantic Grill, LLC.

- Page 9: *As of the date of this application, Applicant is a small business concern at least 51 percent owned and controlled by ... Veteran(s).* Sachetti falsely checked the box next to this option to indicate it was true.

- Page 9: *The authorized representative of the Applicant must self-certify that the Applicant is eligible for priority in awarding grants because the*

*Applicant is an eligible small business concern owned and controlled by one or more … veterans … by initialing here: \_\_\_\_*. Sachetti falsely initialed this statement to indicate it was true.

- Page 10: *I further certify that the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects*. Sachetti falsely initialed this statement to indicate it was true.

- Page 11: *The Applicant is eligible to receive funding under the rules in effect at the time this application is submitted*. Sachetti falsely initialed beside this statement to indicate it was true.

59.     In addition, if Sachetti sold Atlantic Grill, LLC after he applied for the RRF grant, he would have been required to return the funds to the Treasury, which he failed to do:[38]

---

**Sale of business after receipt of RRF funds:**

You may sell your business after you receive RRF funds; however, **before the sale takes place:**

- The seller must demonstrate to SBA that all RRF funds have been used for eligible purposes prior to the sale; or
- The seller may remit to the Treasury any RRF funds that have not been used for eligible purposes.

---

[38] SBA, *RRF Knowledge Base – How do I apply if I acquired an eligible business? Can I sell my business after I receive RRF funding?*, https://ussbaforgiveness.zendesk.com/hc/en-us/articles/360059662271-How-do-I-apply-if-I-acquired-an-eligible-business-Can-I-sell-my-business-after-I-receive-RRF-funding (last visited Sept. 18, 2024).

60.    Therefore, if Sachetti sold Atlantic Grill, LLC after he applied for the RRF grant, he knowingly and improperly avoided an obligation to transmit money to the government.

## VI.    CAUSES OF ACTION

### COUNT I
### (AGAINST ALL DEFENDANTS)
### (Violation of False Claims Act, 31 U.S.C. § 3729(a)(1)(A))

61.    Relator incorporates by reference paragraphs 1-60.

62.    In violation of 31 U.S.C. § 3729(a)(1)(A), Defendants knowingly presented or caused to be presented a false or fraudulent claim for payment to the United States government.

### COUNT II
### (AGAINST ALL DEFENDANTS)
### (Violation of False Claims Act, 31 U.S.C. § 3729(a)(1)(B))

63.    Relator incorporates by reference paragraphs 1-60.

64.    In violation of 31 U.S.C. § 3729(a)(1)(B), Defendants knowingly made, used, or caused to be made or used, a false record or statement material to a false or fraudulent claim.

### COUNT III
### (AGAINST ALL DEFENDANTS)
### (Violation of False Claims Act, 31 U.S.C. § 3729(a)(1)(G))

65.    Relator incorporates by reference paragraphs 1-60.

66.    In violation of 31 U.S.C. § 3729(a)(1)(G), Defendants knowingly made, used, or caused to be made or used, a false record or statement material to an

obligation to pay or transmit money or property to the government, or knowingly concealed or knowingly and improperly avoided or decreased an obligation to pay or transmit money to the government.

## VII.  PRAYER FOR RELIEF

**WHEREFORE,** Relator respectfully requests that judgment be entered in favor of Relator and the United States and against Defendants as follows:

A.    Treble the United States' damages in an amount to be determined at trial and such civil penalties as are required by law, under 31 U.S.C. § 3729(a);

B.    An award of costs and fees, under 31 U.S.C. §§ 3729(a)(3) & 3730(d); and

C.    Such further relief as is proper.

## VIII.  JURY DEMAND

Plaintiff demands a trial by jury on all claims so triable in this action.

Dated: October 15, 2024          By: * /s/ David M. Cohen*
_____
David M. Cohen
Ga. Bar No. 173503
**COMPLEX LAW GROUP, LLC**
40 Powder Springs Street
Marietta, GA 30064
Tel: (770) 200-3100
Fax: (770) 200-3101
Email: dcohen@complexlaw.com

*Additional counsel listed on following page*

25

Noah Rich (*pro hac vice* to be filed)
nrich@baronbudd.com
Andrew M. Miller (*pro hac vice* to be filed)
amiller@baronbudd.com
**BARON & BUDD, P.C.**
The Watergate
2600 Virginia Ave. NW, Ste. 612
Washington, DC 20037
Telephone: (202) 333-4562
Facsimile: (202) 337-1039

*Attorneys for Plaintiff/Relator*